IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00357-CNS

D.W.,

    Plaintiff,

v.

COMMISSIONER, Social Security Administration,

    Defendant.

## ORDER

Plaintiff D.W.[1] seeks disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI under the Social Security Act for a number of mental and physical impairments: chronic pain, L4-L5 moderate to severe arthrosis, L5-S2 severe bilateral arthrosis, severe advanced degenerative facet disease, chronic right L5 radiculopathy, posttraumatic stress disorder, major depressive disorder, and gastroesophageal reflux disease (Administrative Record (A.R.) at 502, 539, 591, 600, 798, 866). D.W. filed this lawsuit for judicial review of the final decision by the Social Security Administration Commissioner (the Commissioner) denying her benefits claim. Exercising jurisdiction under 42 U.S.C. § 405(g), the Court REVERSES the Commissioner's denial of benefits, and REMANDS for further analysis.

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff D.W. is identified by her initials only.

1

## I. BACKGROUND

D.W. was born on October 3, 1969 (A.R. at 79). She was 49 years old at the alleged onset date of disability of December 3, 2018 (*id.*). Prior to the alleged onset date, D.W. worked various jobs: (1) from 2001 to 2006, she worked as a Motor Vehicle Deputy and (2) from 2006 to 2012 she was self-employed at Automotive and Diesel Repair (*id.* at 325).

On March 5, 2019, D.W. was involved in a motor vehicle collision (*id.* at 398). On April 3, 2019, D.W. consulted with Dr. Vanston Masri regarding pain in her lower back, left knee, neck, and headaches that she experienced every 48 hours as a result of her accident (*id.* at 460). On April 5, 2019, D.W. underwent an MRI of her lumbar spine which revealed a right foraminal/lateral disc herniation at L3-4, a small annular tear at L4-5, and high grade hypertrophic right facet arthropathy at L5-S1 (*id.* at 437-38).

In July 2019, D.W. received physical therapy and chiropractic care but was released from chiropractic care as it carried a low probability of altering her long-term prognosis (*id.* at 448, 505). Scott Oliphant, D.C., recommended that D.W. should continue with Dr. Masri for pain management (*id.* at 506). In July 2019 and September 2020, Dr. Oliphant issued a "Functional Limitations Statement (Physical)" that noted that D.W. could sit or stand for less than two hours in an eight-hour day, could lift up to 5-10 pounds occasionally, and would be absent from work more than two days a month (*id.* at 467). Dr. Oliphant opined that D.W. was limited to less than sedentary work activity (*id.* at 467, 507, 696, 829).

On January 6, 2020, D.W. underwent an examination with Margaret MacDonald, M.D (*id.* at 525). She reported back pain and feeling generally weak (*id.*). On examination, Dr. MacDonald noticed that D.W. walked slowly without an assistive device but walked with an antalgic gait

favoring her right leg (*id.* at 527). She further observed that D.W. had difficulty removing her brace and jacket, guarded her back, avoided bending, and needed to support herself when sitting down (*id.*) She reported that she was independent in bathing, dressing, personal care, going to appointments, and simple cooking; however, those activities took her more time to complete and she spent many hours of the day lying down (*id.* at 526). Dr. MacDonald assessed that D.W. was "limited in most motor activities" due to her significant physical issues and radiculopathy and opined that she "could sit and stand for two hours in an eight-hour day, could lift up to 10 pounds, was limited to occasional postural maneuvers including reaching overhead, and should avoid workplace hazards due to issues with mobility" (*id.* at 530-31). Dr. MacDonald also concluded that D.W. was limited to less than sedentary work (*id.* at 19). Jeffry Holtgrewe, M.D., reviewed D.W.'s medical records and found similar results stating that she retained the ability to perform light-level work with limited postural maneuvers and the need to avoid workplace hazards (*id.* at 86-87).

    D.W.'s June 2020 MRI results displayed "L2-3 disc herniation without stenosis, L3-4 annular tear and right disc herniation with encroachment with right exiting L3 nerve impingement, L4-5 disc herniation without stenosis, L5-S1 disc herniation with bilateral exiting L5 nerve impingement, and dextroscoliosis" (*id.* at 759-60). Later in July, D.W. consulted with Christopher Gallus, D.O., and was assessed with L4-S1 bilateral facet arthropathy and stenosis causing lumbago and radiculopathy (*id.* at 801). However, she had full strength, a normal range of motion, and intact sensation of the bilateral lower extremities (*id.* at 805-06). She was recommended a more aggressive conservative treatment and pain management, and was also advised to stop smoking in order for Dr. Gallus to perform surgery (*id.* at 800). In August 2020, state agency

physician Carol Phelps, M.D., reviewed the medical records and agreed with Dr. Holtgrewe's findings that D.W.'s functional abilities along with Drs. MacDonald's and Oliphant's opinions were inconsistent with the medical evidence (*id.* at 114-17).

In September 2020, D.W. consulted with Scott Boyer, M.D., with complaints of low back pain (*id.* at 699). Dr. Boyer recommended a fusion but D.W. decided to delay the surgery until she could arrange childcare (*see* A.R. at 821, 866).[2] Dr. Boyer recommended a CT of the lumbar spine which exhibited multilevel degenerative disc disease and multilevel neuroforaminal narrowing most pronounced left L5-SI (*id.* at 711). Dr. Boyer opined that D.W. was unable to sit, stand, or walk for an 8-hour day due to the degenerative issues in her back (*id.* at 829). In November 2020, the EMG/NCS study showed "mild chronic right L5 radiculopathy without active denervation (loss of nerve supply) and no evidence of plexopathy (a disorder of the network of nerves in the lumbosacral plexus) or generalized large fiber polyneuropathy (damage to peripheral nerves)" (ECF No. 11 at 6; A.R. at 754). D.W. was then diagnosed with lumbar radiculopathy with paresthesias on November 6, 2020 (*id.* at 751).

D.W. applied again for disability insurance and supplemental security income on June 5, 2019 (*id.* at 41-42). D.W. alleges that she became disabled on December 3, 2018 (*id.* at 10). D.W.'s application was denied on January 10, 2020, and on August 4, 2020, upon reconsideration (*id.* at 42). D.W. then filed a request for a hearing before an Administrative Law Judge, (ALJ), which was held on May 24, 2021 (*id.* at 39). During the hearing, she once more alleged disability and amended the onset date to March 5, 2019, the date of the motor vehicle collision (*id.* at 44-45).

---

[2] D.W. is a single parent and primarily raises her 8-year-old child (A.R. at 728, 746). D.W.'s mother became her child's second legal parent via adoption (*id.*).

Based on the testimony of the vocational expert (VE), the ALJ found that D.W. "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (*id.* at 21). On June 2, 2021, the ALJ issued a written order finding that under the Act, D.W. was not disabled from the onset date through the date of the decision (*id.* at 21-22). D.W. subsequently requested the Social Security Appeals Council to review the decision, which was denied (*id.* at 1). D.W. timely sought review in this Court (ECF No. 1). D.W. raises three arguments on appeal: (1) the ALJ's finding that the opinions of Drs. Boyer and Oliphant were unpersuasive was not based on substantial evidence; (2) the ALJ's finding that the opinion of Dr. MacDonald was unpersuasive was not based on substantial evidence; and (3) the ALJ failed to comply with SSR 16-3p resulting in harmful error (ECF No. 10). The Court finds that it can examine the first two arguments together and will address this issue first.

## II. LEGAL STANDARD AND STANDARD OF REVIEW

An individual is disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing their disability. *See id.* at 1062. To determine whether an individual is disabled, courts use a five-step, sequential analysis that considers whether the individual:

> (1) is currently engaged in "substantial gainful activity";
>
> (2) has a "severe" impairment or impairments;
>
> (3) the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;

>  (4) the impairment or impairments prevent the individual from doing their past work; and
>
>  (5) has the "residual functional capacity" to perform other work in the national economy

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). If Plaintiff "is not considered disabled at step three, but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner" to show Plaintiff has the residual functional capacity (RFC) to perform other work in the national economy while considering their age, education, and work experience. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The Court reviews the Social Security Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2022). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The threshold for this "evidentiary sufficiency is not high," and requires only enough evidence that a reasonable person might accept as adequate to support the ALJ's decision. *Id.* Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotations omitted).

## III.  ANALYSIS

Having reviewed the administrative record, the parties' briefs, and relevant legal authority, the Court reverses the Commissioner's denial of benefits and remands for further analysis.

### A.  The Opinions of Drs. Boyer, Oliphant, and MacDonald

The ALJ found that the opinions of the state agency consultants that evaluated D.W.'s physical impairments were unpersuasive because they were "not supported by the evidence" (A.R. at 18).  The ALJ next found the opinions of the claimant's treating providers, Drs. Boyer and Oliphant, were unpersuasive for the same reason (*id.* at 19).  Finally, the ALJ found the opinion of the consultative examiner, Dr. MacDonald, unpersuasive again for identical reasoning (*id.*).  The ALJ determined that D.W. had:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can of occasionally lift and carry 20 pounds, frequently 10 pounds; can sit for approximately six hours in an eight hour day; stand and walk for approximately four hours in an eight hour day; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, crouch, kneel and crawl; occasionally reach overhead bilaterally; needs to avoid concentrated exposure to excessive vibration; cannot work around unprotected heights or moving and/or dangerous machinery; and can perform simple, routine, repetitive tasks.

(*Id.* at 15).  The ALJ further opined that:

> [i]n terms of the claimant's physical impairments, the undersigned does not find the evidence supports the severity of the alleged symptoms and limitations based on the evidence in the record. The claimant alleged significant physical limitations, which are not fully supported by the medical record. The claimant's treatment records fail to document functional limitations consistent with those alleged by the claimant. The record contains routine treatment of the claimant's impairments during the relevant period without significant complications of recurrent emergency room visits or hospitalizations for exacerbations of pain. She was recommended to increase her activity. (Ex. B20F/1-2). She was treated with physical therapy, chiropractic care and injections with generally stable findings on exams. (Ex. B3F/3; B20F/1-2). She was generally neurologically intact with normal strength, intact sensation and normal gait. (Ex. B1F/6;

>  B18F/29-32). She was recommended surgical intervention, but she opted to hold off until her child got out of school and her mother could come to stay with her. (Ex. B20F/1; B23F/18). The undersigned has considered the claimant's statements regarding the alleged symptoms and functional limitations and the undersigned finds the evidence does not support the degree of functional limitations alleged by the claimant.

(*Id.* at 16) (emphasis added). The Court finds that the ALJ's assessment of all three physicians' reports did not account for the entirety of their evaluation and their opinions that D.W. was limited to less than sedentary work activity.

An ALJ may not "pick and choose" among medical reports, using portions of "evidence favorable" to the determination "while ignoring" or "downplay[ing] evidence to support [his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (quotations omitted); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (concluding ALJ erred by relying on "portions of medical reports" while "ignoring other portions of the same reports" that "confirmed" physician's observations and conclusions regarding claimant's limitations because ALJ "may not pick and choose" among medical reports).

The Court finds that the ALJ impermissibly "cherry-picked" facts from the record in order to support his conclusion. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted). As such, the ALJ did not apply the correct legal standard in assessing the three physicians' medical opinions. *Cf. Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (concluding that ALJ's failure to apply proper legal standard is grounds for reversal); *Pisciotta*, 500 F.3d at 1075 (courts review ALJ's findings to ensure correct legal standards were applied). For this reason, remand is appropriate. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 643 (10th Cir. 2018) (remanding where ALJ failed to apply the

8

correct legal standard in "evaluating the medical evidence" and to reconsider weight to be given to discounted physician's opinion "after conducting a more robust analysis of all the medical evidence.") (emphasis added) (citation omitted).

### B. Remaining Claim

The Court must stop its analysis at this point because the remaining arguments raised in D.W.'s briefing "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). On remand, the ALJ is directed to consider the remaining issues raised in D.W.'s briefing and to modify the decision if appropriate.

### IV. CONCLUSION

For the reasons set forth above, the Court REVERSES the Commissioner's decision denying D.W.'s applications for DIB and SSI, and REMANDS for further proceedings consistent with this Order.

DATED this 31st day of March 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge